# UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

|  |  |  |
|---|---|---|
| *In re:* | ) | |
| | ) | |
| KENT N. BERGER, | ) | Case No. 12-72670-FJS |
| | ) | |
| *Debtor.* | ) | Chapter 7 |
| | ) | |

## MEMORANDUM OPINION

This matter comes before the Court upon the "Motion to Dismiss, or, In the Alternative, to Transfer to Another District, for Improper Venue" (the "Motion to Dismiss") filed by the Chapter 7 Trustee, Lawrence H. Glanzer (the "Trustee"). In this case, this Court considers the location of the debtor's domicile for the purpose of determining proper venue. The issue is whether the debtor was domiciled in the Commonwealth of Virginia at the time of the filing of his voluntary petition for bankruptcy. If the debtor was domiciled in Virginia at the time he filed, then the Trustee's Motion to Dismiss must be denied. If the Debtor was not domiciled in Virginia as of the date he filed his voluntary petition, then the Trustee's motion must be granted, and the case will be either dismissed or transferred. For the reasons explained more fully below, the Court finds that the Debtor was domiciled in the Commonwealth of Virginia at the time he filed his voluntary petition for bankruptcy. The Motion to Dismiss is denied and the case will neither be dismissed nor transferred to another jurisdiction.

## I.     Jurisdiction

The Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference from the United States District Court for the Eastern District

of Virginia dated August 15, 1984. This is a core proceeding pursuant to 28 U.S.C. §

157(b)(2)(A) and is governed by Federal Rule of Bankruptcy Procedure 1014.

## II.    Background and Facts

On June 21, 2012, at 4:06 PM EST Kent N. Berger (the "Debtor"), by counsel, filed his

voluntary petition for relief under Chapter 7 of Title 11 of the United States Code. Relief was

ordered. The Debtor indicated on his Voluntary Petition Official Form B1 in the section entitled

"Information Regarding the Debtor – Venue" that "Debtor has been domiciled or has had a

residence, principal place of business, or principal assets in this District for 180 days

immediately preceding the date of this petition or for a longer part of such 180 days than in any

other District."[1]

The Debtor's Section 341 Meeting of Creditors was held on July 31, 2012. Based upon

testimony given by the Debtor at his Section 341 Meeting of Creditors the Trustee brought the

instant Motion to Dismiss.

The Motion to Dismiss alleges that the Debtor improperly filed his case in the Eastern

District of Virginia, Norfolk Division, and that the Court should either transfer or dismiss the

case pursuant to Federal Rule of Bankruptcy Procedure 1014. The Trustee alleges, and the record

indicates, that the Debtor was living in Mandan, North Dakota, at the time he filed his voluntary

petition in the Eastern District of Virginia, Norfolk Division. The Trustee notes that the Debtor's

residential lease in Mandan commenced on October 10, 2011; that the Debtor filed a state

income tax return for 2011 in North Dakota; that the Debtor owned no real estate in Virginia; the

---

[1] Voluntary Pet. 2, June 21, 2012, ECF No. 1. This statement was signed under oath and under penalty of perjury.

2

Debtor had a bank account in North Dakota; and that one of the Debtor's vehicles was in his possession in North Dakota.

The Debtor responded to the Motion to Dismiss, indicating that his intention was not to remain in North Dakota, but rather to return to Virginia as soon as he found employment in the Commonwealth. Moreover, the Debtor stated that he had no objection to the Trustee's Motion to Dismiss. A hearing was scheduled on the Motion to Dismiss on October 10, 2012.

The Debtor and Trustee appeared at the October 10, 2012 hearing. Counsel for United States Surety Company ("Surety") appeared as a creditor and party in interest.[2] Upon consideration of the arguments made by the parties, and in consideration of the Debtor's strained circumstances, the Court continued the hearing on the Motion to Dismiss to December 4, 2012. To minimize costs to the Debtor, the Court directed that he be examined under oath by the parties on December 3, 2012.

### A. The Evidentiary Hearing

At the evidentiary hearing on December 4, 2012, the Trustee's earlier allegations were corroborated by documentary evidence and the Debtor's sworn testimony. Prior to putting on evidence at the evidentiary hearing, the Trustee quoted from his Motion to Dismiss, citing to *United Co. v. Keenan*, No. 1:06cv0071, 2006 U.S. Dist. LEXIS 76125, *9-10 (W.D. Va. Oct. 20, 2006) for the proposition that:

> [A] person is 'domiciled' in a location where he or she has established a 'fixed habitation or abode in a particular place, and [intends] to remain there permanently or indefinitely.'" *Lew v. Moss*, 797 F.2d 747, 749-50 (9th Cir. 1986). Furthermore, a person may change his domicile "instantly by taking up residence

---

[2] Shortly after the Debtor filed this case, Surety initiated an adversary proceeding to determine the dischargeability of certain debts owed to it by the Debtor. *See U.S. Surety Co. v. Berger* (*In re Berger*), No. 12-72760, Adv. No. 12-07317-FJS (Sept. 19, 2012), ECF No. 1.

> in another state with the intent to remain there. 'He need not intend to remain
> permanently at the new domicile; it is enough that he intends to make the new
> state his home and that he has no present intention of going elsewhere.'" *Gambelli
> v. United States*, 904 F. Supp. 494, 497 (E.D. Va. 1995) (citing *Miller v. Lee*, 241
> F. Supp. 19, 22 (W.D.S.C. 1965)). Based upon well-settled Supreme Court
> precedent, a new domicile may be established by a showing of (1) physical
> presence in a new state; and (2) the intent to remain there. *See Miss. Band of
> Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) (citing *Texas v. Florida*,
> 306 U.S. 398, 424 (1939)).

*United Co.*, 2006 U.S. Dist. LEXIS 76125, at *9-10. The Trustee informed the Court that his argument would focus on the Debtor's inability to establish that he had a residence in the Commonwealth of Virginia and that the Debtor's principal assets were with him in North Dakota. In the sum, the Trustee argued that this evidence would show that the Debtor was not domiciled in the Commonwealth of Virginia even though the Debtor "had a desire at some point to return to Virginia."[3]

The Debtor argued that cause existed to transfer venue pursuant to 28 U.S.C. § 1412, claiming that if the bankruptcy case were to remain in the Eastern District of Virginia, it would cause him economic hardship in light of wages he would lose and travel expenses he would incur. The Debtor offered no further opening comments.

Surety argued that the issue before the Court was "whether [the Debtor] established a new domicile in North Dakota and whether he had done so prior to the filing of this case."[4] Surety represented that its evidence would demonstrate that the Debtor had not established his domicile in North Dakota prior to the filing of the bankruptcy case. Instead, Surety asserted, the Debtor's intent was to return to the Commonwealth of Virginia and he had no intent to remain

---

[3] Evid. Hr'g Tr.11:25-12:1, Dec. 4, 2012, ECF No. 17.
[4] *Id.* at 19:2-4.

4

permanently in North Dakota at the time he filed his bankruptcy case. The Court agreed with Surety's contention that the issue was one of the Debtor's domicile as of the date of filing and directed the parties to limit their evidence to that issue.

Upon examination by the Trustee, the Debtor confirmed that he did not maintain a residence in Virginia as of the filing date. The Debtor testified that he had resided in Mandan, North Dakota, from October 2011 through the present (December 2012). The Debtor also testified that the address on his bankruptcy petition was that of his brother, where his wife and son had been staying after the marital home was lost to foreclosure and the Debtor moved to Mandan. The Debtor represented that for 2011, he filed a federal tax return, a state tax return for Virginia, and a state tax return for North Dakota, all of which bore the Debtor's North Dakota address. Upon further questioning, the Debtor affirmed that documents and communication related to his life insurance policy were now sent to his North Dakota address. The Debtor further testified that he obtained a North Dakota driver's license and re-titling one of his vehicles in North Dakota so that he could be placed on his employer's insurance policy in 2012, after the filing date.[5]

The Debtor confirmed that he took all of his personal possessions with him in the fall of 2011 when he moved to North Dakota and that he no longer owned any real property in the Commonwealth of Virginia. The Debtor testified that at the time of filing he intended to return to Virginia, but that he "did not have a particular place of residence or abode to which to return."[6] Counsel for the Debtor had no questions.

---

[5] *Id.* at 19:2-32:3.
[6] *Id.* at 33:8.

Surety's questions to the Debtor established that he resided in Virginia for eighteen years, from approximately 1993 to 2011. The Debtor testified that he left Virginia to find work in North Dakota, while his wife and child remained in Virginia, and he intended to return to Virginia at the earliest opportunity. The Debtor further testified that his intent to return to Virginia did not change following the foreclosure of his marital residence and his family moving into his brother's home. The Debtor also testified that he visited his wife and child in Virginia "as often as possible."[7] Finally, Surety elicited from the Debtor that he intended to return to Virginia from North Dakota until his brother left the Commonwealth, after the filing date, at which time his wife and child joined him in North Dakota.

At the conclusion of the evidence, the Trustee argued that as of the filing date, the Debtor was not a resident of Virginia, had no assets in Virginia, and was therefore not domiciled in Virginia. Surety argued that prior to the filing date the Debtor was both a resident and domiciliary of Virginia, and that after leaving Virginia to find work, it was always the Debtor's intent to return to Virginia, and not remain in North Dakota.

At the conclusion of the hearing, the Court found the Debtor to be a credible witness, testifying consistently as to his intent to return to Virginia at the time he filed his bankruptcy petition.[8] The Court found that "there [was] no evidence that [the Debtor] intended to change his domicile to North Dakota" at or before the time he filed his bankruptcy petition.[9] The Court further found that "based on the evidence . . . [the Debtor], at the time that he filed, fully intended to come back to Virginia, that subsequent events precluded that and that his intent has

---

[7] *Id.* at 35:17-19.
[8] The Court again expresses its appreciation to the Debtor for what it found was his "direct and . . . unvarnished" testimony. *Id.* at 52:12-15.
[9] *Id.* at 48:2-3.

since changed. But on June 21st, 2012, at 4:06 PM . . . , [the Debtor] intended to return to Virginia."[10] The Court gave the parties the opportunity to submit short briefs specifically addressing the import of these findings of fact on the status of the Debtor's domicile on the filing date.

### B.  The Letter Briefs

In its letter brief, Surety argued that a domicile is not lost until a new domicile is established, relying on the Supreme Court's holding in *Desmare v. United States*, 93 U.S. 605, 610 (1876), that "[a] domicile once existing continues until another is acquired. A person cannot be without a legal domicile somewhere." Surety pointed out that a decision from the Eastern District of Virginia has followed the *Desmare* holding, *Sealey v. United States*, 7 F. Supp. 434, 437 (E.D. Va. 1934). The Court notes that neither of these decisions have been reversed, superseded, or abridged on this point and are binding precedent upon this Court.

In further support of the proposition espoused in *Desmare*, Surety discussed a case also relied upon by the Trustee, *In re Steele*, 323 B.R. 776, 778 (Bankr. N.D. Fla. 2004). The *Steele* court relied upon a Fourth Circuit decision finding that "'every man must have a domicile somewhere, and he can have but one.'" *In re Steele*, 323 B.R. at 778 (quoting *Swift & Co. v. Licklider*, 7 F.2d 18, 21 (4th Cir. 1925)). In addition, Surety pointed out that in the *United Co.* case from the Western District of Virginia, Magistrate Judge Sargent reiterated the proposition that "until a person establishes a new domicile, that person's former domicile will govern." *United Co. v. Keenan*, No. 1:06cv0071, 2006 U.S. Dist. LEXIS 76125, *10 (W.D. Va. Oct. 20, 2006).

---

[10] *Id.* at 50:16-21.

Surety also addressed the inquiry raised at the evidentiary hearing as to whether it was possible for an individual to be without a domicile. It argued this was not possible. Surety supported its argument that Berger remained domiciled in Virginia by noting that a "United States citizen residing in the United States always has a domicile in some state," *In re Frame*, 120 B.R. 718, 723 (Bankr. S.D.N.Y. 1990). Finally, Surety noted that since the Court earlier found that the Debtor had not established his domicile in North Dakota as of the filing date, then his domicile remained Virginia, and venue was proper.[11]

In his post-hearing submission to the Court, the Trustee reiterated his evidence from the evidentiary hearing. He acknowledged Surety's position, agreeing with the contention that a domicile remains until a new one is established. The Trustee argued that the facts and circumstances surrounding the Debtor's move to North Dakota, however, created enough of an evidentiary basis to enable the Court to conclude that he had carried his burden of establishing that the Debtor's domicile had changed to North Dakota as of the filing date. The Trustee further argued that "declarations of intent . . . are to be given heavy but not conclusive weight."[12] The Trustee argued that a decision from Supreme Court of North Dakota, *Farstveet v. Rudolph*, 2000 N.D. 189, P49, 630 N.W.2d 24, 36 (N.D. 2000) (Kapsner, J., dissenting & concurring), established that the law of Virginia is similar to the law of North Dakota regarding the factors examined to determine if an individual has established a new domicile. Those factors are physical presence in the forum state and intent to remain. *Id.*; *accord United Co.*, 2006 U.S. Dist. Lexis at *10-11. The Trustee concluded that the facts and circumstances of the present case

---

[11] Resp. Mot. Dismiss at 1, Dec. 18, 2012, ECF No. 23
[12] Tr. Ltr. Br. 3-4, Dec. 31, 2012 ECF No. 27 (quoting *United Co.*, 2006 U.S. Dist. LEXIS 76125, at *10-11 (citations and internal quotations omitted)).

showed that the Debtor had established his domicile as being North Dakota prior to the filing of

his bankruptcy in the Eastern District of Virginia under either North Dakota or Virginia

jurisprudence.

### III.    Discussion

The venue of a bankruptcy case is governed by 28 U.S.C. § 1408, which states in relevant

part:

> Except as provided in section 1410 of this title, a case under title 11 may be
> commenced in the district court for the district—
>
> (1) in which the domicile, residence, principal place of business in the United
>     States, or principal assets in the United States, of the person or entity that is
>     the subject of such case have been located for the one hundred and eighty days
>     immediately preceding such commencement, or for a longer portion of such
>     one-hundred-and-eighty-day period than the domicile, residence, or principal
>     place of business, in the United States, or principal assets in the United States,
>     of such person were located in any other district . . . .

28 U.S.C. § 1408(1). When the Trustee challenged the Debtor's selection of the Eastern District

of Virginia as being the appropriate venue for this bankruptcy case, he did so pursuant to Federal

Rule of Bankruptcy Procedure 1014(a)(2), *Dismissal and Change of Venue*, which provides:

> (2) *Cases Filed in Improper District*. If a petition is filed in an improper district,
>     the court, on the timely motion of a party in interest or on its own motion, and
>     after hearing on notice to the petitioners, the United States trustee, and other
>     entities as directed by the court, may dismiss the case or transfer it to any
>     other district if the court determines that transfer is in the interest of justice or
>     for the convenience of the parties.

Fed. R. Bankr. P. 1014(a)(2). The rule does not allow for any judicial discretion; if venue is

improperly laid in this district then this Court must either transfer or dismiss the case. *Id.*; *see In*

*re Great Lakes Hotel Assocs.*, 154 B.R. 667, 670 (E.D. Va. 1992). When a bankruptcy court

determines that venue in a particular district is appropriate, that decision is final and therefore

appealable. *See In re Great Lakes Hotel Assocs.*, 154 B.R. at 669 (citing *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1009-10 (4th Cir. 1986), *cert. denied*, 479 U.S. 876 (1986)).

For this Court to find that venue is properly laid in this district it must find that the "domicile, residence, principal place of business . . . or principal assets" of the Debtor were located in this district within the 180 days prior to the filing date. 28 U.S.C. § 1408(1). The evidence is uncontroverted that the Debtor did not reside, have assets, or have as his principal place of business the Eastern District of Virginia. The Court therefore focuses its attention on the Debtor's domicile at the time of the filing of his bankruptcy.

It is well settled in this district with regard to the determination of a debtor's domicile that:

> The issue of domicile is a fact-based analysis that is not disposed of by one element but rather depends on a variety of factors that when reviewed as a whole, evidence an intent to be domiciled in a state. *Gambelli v. United States*, 904 F. Supp. 494, 497 (E.D. Va. 1995) (stating registering one's car in that state, obtaining a driver's license in that state, joining community groups, and testifying to one's intention to remain in the state are indicia of domicile), *aff'd*, 87 F.3d 1308 (4th Cir. 1996); *State-Planters Bank & Trust Co. v. Virginia*, 174 Va. 289, 6 S.E.2d 629, 631 (1940); *Bloomfield v. City of St. Petersburg Beach*, 82 So. 2d 364, 368 (Fla. 1955) (setting forth a variety of factors relied on by the court to determine whether a party was domiciled in the state); [4A *Michie's Jurisprudence of Virginia and West Virginia*, Conflict of Laws, Domicile and Residence § 9] (stating "[t]he intent necessary for a change of domicile must be determined in the light of all the evidence, the circumstances, and the reasonable inferences to be drawn therefrom").

> In Virginia, to establish a domicile, the party must have a physical presence in the state and an intention to remain in the state for an unlimited time. *Smith v. Wellberg (In re Wellberg)*, 12 B.R. 48, 50 (Bankr. E.D. Va. 1981) (citing *Smith v. Smith's Ex'r*, 122 Va. 341, 94 S.E. 777 (1918); *Layton v. Pribble*, 200 Va. 405, 105 S.E.2d 864 (1958)); *State-Planters Bank*, 6 S.E.2d at 631; *see Swift & Co. v. Licklider*, 7 F.2d 19, 21 (4th Cir. 1925).

> The intent of the person is often in question. It must frequently be determined from the declarations and conduct of the person in light

10

of the attending circumstances. When the evidence is conflicting, the opposing facts must be balanced one against the other. Slight circumstances must often decide the question. The solution of the question depends upon the preponderance of the evidence in favor of one place or the other. All acts indicative of the purpose must be carefully scrutinized.

*State-Planters Bank*, 6 S.E.2d at 631.

It is well established that a person may have more than one residence, but only one domicile. *Gambelli*, 904 F. Supp. at 496; *Wellberg*, 12 B.R. at 50; *see Swift & Co.*, 7 F.2d at 20. A change in residence without a change in an intent to return to the original state does not indicate a change in domicile. *Wellberg*, 12 B.R. at 50-51 (citing *French v. Short*, 207 Va. 548, 151 S.E.2d 354 (1966); *Lewis v. Splashdam By-Products Corp.*, 233 F. Supp. 47 (W.D. Va. 1964); *Jardine v. Intehar*, 213 F. Supp. 598 (S.D. W.Va. 1963)). Unless a person's intent changes, the domicile is not altered. *Id.*

The burden of proving a change in domicile is on the person alleging the change. [4A *Michie's Jurisprudence of Virginia and West Virginia*, Conflict of Laws, Domicile and Residence § 9.]

*In re Koons*, 225 B.R. 121, 123 (Bankr. E.D. Va. 1998). Furthermore, the Supreme Court of the United States has held for 137 years that "[a] domicile once existing continues until another is acquired. A person cannot be without a legal domicile somewhere." *Desmare*, 93 U.S. at 610. [13]

## IV.    Analysis

The evidence is uncontroverted that prior to September 2011 the Debtor's domicile was in the Eastern District of Virginia. The Debtor resided in the Eastern District of Virginia from approximately 1993 to the fall of 2011 when he left for Mandan, North Dakota. This Court has already found that the Debtor did not reside in the Eastern District of Virginia for the greater part

---

[13] Regarding the inquiry raised at the evidentiary hearing as to whether it was possible for an individual to be without a domicile, it is not. *See Gregg v. Louisiana Power & Light Co.*, 626 F.2d 1315, 1317 (5th Cir. 1980); *Krasnov v. Dinan*, 465 F.2d 1298 (3d Cir. 1972); *Kaiser v. Loomis*, 391 F.2d 1007 (6th Cir. 1968); *Ellis v. Se. Constr. Co.*, 260 F.2d 280 (8th Cir. 1958); *Barber v. Varleta*, 199 F.2d 419, 423 (9th Cir. 1952) (noting "the common American rule that one domicile is not lost until another is acquired"); *Dotson v. Virginia*, 192 Va. 565, 571-72, 66 S.E.2d 490 494 (1951) (same).

of the 180 days prior the filing date. This fact is not dispositive because, "[r]esidence and domicile are not the same thing." *Pac. Mut. Life Ins. Co. v. Tompkins*, 101 F. 539, 543 (4th Cir. 1900). "Domicile . . . means more than residence." *Long v. Ryan*, 71 Va. (30 Gratt.) 718, 720 (1876). Domicile is two things: "a physical presence in the state and an intention to remain in the state for an unlimited time." *In re Wellberg*, 12 B.R. at 50.

The Debtor's absence from Virginia, despite the length of time, would not result in the loss or change of domicile, as long as there did not exist on the part of the Debtor an intent to change his domicile at any point between his arrival in North Dakota and the filing date.[14] In other words, if the Debtor arrived in North Dakota and even for a moment thought "this is my new domicile," then his domicile would change. Nothing on the record, however, points to this as having occurred before the petition was filed. "Mere absence from a fixed home, however long continued, cannot work the change. There must be the *animus* to change the prior domicile for another. Until the new one is acquired, the old one remains." *Mitchell v. United States*, 88 U.S. (21 Wall.) 350, 353 (1874) (emphasis in original).[15]

The evidence clearly demonstrates that the Debtor resided in North Dakota as of the filing date. However, "[a] change in residence without a change in an intent to return to the original state does not indicate a change in domicile." *In re Wellberg*, 12 B.R. at 50-51. Turning

---

[14] In *Sun Printing and Publishing Association v. Edwards* the Supreme Court opined, "it is elementary that, to effect a change of one's legal domicil, two things are indispensable: First, residence in a new domicil; and, second, the intention to remain there. The change cannot be made, except *facto et animo*. Both are alike necessary. Either without the other is insufficient." *Sun Printing & Publ'g Ass'n v. Edwards*, 194 U.S. 377, 383 (1904) (citing *Mitchell v United States*, 88 U.S. (21 Wall.) 350, 353 (1874)). *See Jones v. League*, 59 U.S. (18 How.) 76, 81 (1855) (holding that a change in citizenship must be accompanied by a *bonâ fide* intent to change it); *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954) ("Any person, *sui juris*, may make a *bonâ fide* change of domicile at any time . . .").

[15] Justice Jackson wrote, "While the intention to return must be fixed, the date need not be; while the intention to return must be unconditional, the time may be, and in most cases of necessity is, contingent. The intention must not waver before the uncertainties of time, but one may not be visited with unwelcome domicile for lacking the gift of prophecy." *District of Columbia v. Murphy*, 314 U.S. 441, 455 n.9 (1941).

to intent, this Court already found, as a finding of fact, that "there [was] no evidence that [the Debtor] intended to change his domicile to North Dakota" at the time he filed his bankruptcy petition.[16] The Court further found that "based on the evidence . . . [the Debtor], at the time that he filed, fully intended to come back to Virginia, that subsequent events precluded that and that his intent has since changed. But on June 21st, 2012, at 4:06 PM . . . , [the Debtor] intended to return to Virginia."[17] "[U]nless a person's intent changes, the domicile is not altered." *In re Koons*, 225 B.R. at 123 (citations omitted). In accordance with the holding of the Supreme Court of the United States in *Desmare*, the Debtor's domicile prior to filing did not change to North Dakota. *Desmare*, 93 U.S. at 610.

The party moving to invalidate a claim of domicile in a particular location has the burden of showing that change by a preponderance of the evidence. *See State-Planters Bank & Trust Co.*, 174 Va. at 295, 6 S.E.2d at 631. The Trustee's argument is circumstantial and does not go to the Debtor's state of mind. The Trustee introduced evidence showing that the Debtor signed a lease for an apartment in Mandan, North Dakota, that ran from September 2011 through October 2012, and that the Debtor remained there as a month-to-month tenant. The Trustee also introduced evidence that the Debtor registered his vehicle in North Dakota and obtained a North Dakota driver's license.

The Trustee introduced evidence that the Debtor received mail in North Dakota, that he filed a federal tax return showing income from North Dakota, and a state tax return in North Dakota in 2011. Regarding federal income taxes, "[t]he Federal tax system is basically one of self-assessment. In general each taxpayer . . . is required to file a prescribed form of return which

---

[16] Evid. Hr'g Tr. 48:2-3.
[17] *Id.* at 50:16-21.

13

shows the facts upon which tax liability may be determined and assessed." 26 C.F.R. §

601.103(a) (2012). In North Dakota, both residents and non-residents alike are required to pay a

state income tax on the income they receive from "every business, trade, profession, or

occupation carried on it this state." N.D. Cent. Code § 57-38-31 (2013) ("Every resident

individual . . . who is required by the provision of the United States Internal Revenue Code of

1954 . . . to file a federal income tax return . . . shall file an income tax return with the state"); *Id.*

§ 57-38-03 (Imposition of tax against nonresidents); *see Martinez v. Bynum*, 461 U.S. 321, 341

(1983) (Marshall, J., dissenting).[18]

Once again, the operative analysis of an individual's change of domicile involves both

presence and intent to remain. N.D. Cent. Code § 54-01-26(7) ("[legal] residence can be changed

only by the union of act and intent"); *Nw. Mortg. & Sec. Co. v. Noel Const. Co.*, 300 N.W. 28,

31-32 (N.D. 1941). As noted above, for the intent to remain:

> The intent of the person is often in question. It must frequently be
> determined from the declarations and conduct of the person, in light of the
> attending circumstances. When the evidence is conflicting, the opposing facts
> must be balanced one against the other. Slight circumstances must often decide
> the question. The solution of the question depends upon the preponderance of the
> evidence in favor of one place or the other. All acts indicative of the purpose must
> be carefully scrutinized.

*State-Planters Bank & Trust Co.*, 174 Va. at 295-96, 6 S.E.2d at 631 (citations omitted). The

Trustee's evidence does not dissuade the Court of its finding that the Debtor intended to turn to

---

[18] Justice Marshall also notes, "[o]n the other hand, an individual has only one domicile, which is generally the state with which he is currently most closely connected, but which may be a state with which he was closely connected in the past." *Martinez*, 461 U.S. at 340 (citing *Williams v. North Carolina*, 325 U.S. 226, 229 (1945); *Murphy*, 314 U.S. 441; *Williamson v. Osenton*, 232 U.S. 619 (1914)). "Traditionally, an individual has been said to acquire a new domicile when he resides in a State with 'the absence of any intention to live elsewhere,' or with 'the absence of any present intention of not residing permanently or indefinitely in' the new abode.'" *Id.* (citing [Albert Venn Dicey, *A Digest of the Law of England with Reference to the Conflict of Laws* 111 (London, Stevens & Sons, Ltd. 2d ed. 1908)]).

the Virginia and did not intend to remain in North Dakota as of the filing date. The Debtor could not therefore meet the requisite mental intent to change his domicile to North Dakota. *See* N.D. Cent. Code § 54-01-26(7).

The Trustee's argument is not persuasive, and the Trustee did not carry his burden of proof. This Court makes a finding of fact that the Debtor's domicile on the date of the filing of the bankruptcy petition was the Commonwealth of Virginia. This Court makes no finding of fact as to the Debtor's domicile post-petition, which is not germane to the instant matter. A separate Order will follow, denying the Motion to Dismiss.

Upon entry of this Memorandum Opinion, the Clerk of Court is directed to serve via United States Mail a copy of this Memorandum Opinion to: Kent N. Berger, 2124 Oaklawn Court, Virginia Beach, VA 23454, and 1103 2nd Avenue NW, Mandan, ND 58554; Lawrence H. Glanzer, Esq., Chapter 7 Trustee, 580 East Main Street, Suite 300, Norfolk, VA 23510; David Wayne Lannetti, Esq., 101 West Main St., Suite 500, Norfolk, VA 23510; and Andrew K. Rudiger, Esq., 150 West Main Street, Suite 2100, Norfolk, VA 23510, by first-class mail, postage prepaid.

Dated: 5-31-2013

FRANK J. SANTORO
United States Bankruptcy Judge